UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

NO. 6:09-CR-0009-GFVT

UNITED STATES OF AMERICA                                                    PLAINTIFF

V.                              RECOMMENDED DISPOSITION

TIMOTHY JOE HAYS                                                            DEFENDANT

\* \* \* \* \*

The Court considers a Motion to Suppress filed by Defendant Timothy Joe Hays. *See* DE #12 Motion. Defendant, through counsel, moved to suppress evidence obtained pursuant to a state search warrant. *See id.* at 5. In brief, Defendant argues that the affidavit for the search warrant lacked sufficient information to support a finding of probable cause. *See id.* at 4-5. Defendant also argues that the good-faith exception of *United States v. Leon*, 104 S. Ct. 3405 (1984), does not apply. *See* DE #23 Reply, at 4. The United States responded in opposition. *See* DE #20 Response. The Court did not hold an evidentiary hearing because the motion calls for "four corners" review.[1] Having reviewed the briefs submitted by counsel, the Court recommends that the District Court DENY the motion to suppress. A substantial basis supported warrant issuance, and, in any event, *Leon* undoubtedly applies under applicable Sixth Circuit precedent.

**I. Background Information**

On the morning of June 27, 2008, a Kentucky State Police detective discovered, via helicopter surveillance, a significant number of marijuana plants growing on a piece of property in Jackson County. The detective alerted troopers assigned to the Kentucky State Police Marijuana Strike Force, and those troopers proceeded to the identified property. Upon arrival, the officers

---

[1] *See infra* p. 6 (discussing warrant review).

entered the property after lifting a locked metal gate, which restricted the only reasonable means of access to the property, from its hinges. *See* DE #13, Defense Exhibit #4 Search Warrant Affidavit (hereinafter "Aff."), at 1. The troopers confirmed the location and character of the marijuana plants, which grew on a plot of land that contained five structures, a pond, a concrete foundation, and a garden. *See* DE #13 Defense Exhibit #2 Investigation Report (hereinafter "Report"), at 4 (describing the structures as "three shed type buildings[,] a barn[,] and an outhouse"); *see also* Aff., at 1 (property description). A pick-up truck allegedly registered to Defendant Hays also sat on the property. *See id.*

After the troopers secured the property, KSP Trooper Jeremy Devasher left to obtain a search warrant for the property, structures, and vehicle. In addition to reciting the aforementioned facts regarding the discovery of the marijuana, Trooper Devasher averred the following:

> Multiple marijuana plants were confirmed on the property as directed by the spotter. Majority of the plants were located in the garden off the right side of the drive near the first shed and the parked truck. The first shed was indicated by local peace officers as the residence of Timothy Hays. The first shed appeared to have electricity running to it and had a clothes line with clothes hanging on it. The first shed appeared to be a dwelling. The truck on the property is registered to Timothy Hays. Both the first shed[,] the truck and the marijuana plants were within close proximity to each other. All listed buildings to include the barn were landscaped and mowed. There were additional plants located behind the barn, leading from a trail off the mowed area. The total number of plants to include the garden exceeded fifty. The quantity of plants is indicative of cultivation for the purpose of trafficking. A Large quantity of the plants located were observed to be mature in relationship to the time of the season. Based upon my investigation it is believed that the property to specifically include the buildings may yield additional evidence.

*See id.* at 2. The reviewing trial commissioner found probable cause and issued the search warrant. *See id.* Under the authority of the warrant, the troopers searched the property, including the buildings, and ultimately seized marijuana seeds and paraphernalia, 81 marijuana plants, and miscellaneous tax papers. *See* DE #13 Defense Exhibit #3 Warrant Return (hereinafter "Return"),

at 2; *see also* Report, at 4-7 (detailed description of search, location of items seized).

On February 26, 2009, a federal grand jury in this District indicted Hays on a single count of knowingly and intentionally growing and producing 50+ marijuana plants in violation 21 U.S.C. § 841(a)(1).  *See* DE #1 Indictment.  Defendant, through counsel, filed the motion to suppress, arguing that the search warrant lacked probable cause.  Defendant also argued that the search warrant affidavit was "bare bones," thereby making the *Leon* good-faith exception inapplicable.  *See generally* DE #12 Motion; DE #23 Reply.[2]  The United States responded in opposition and provided

---

[2] In his reply brief, Defendant uses the United States's responsive nexus argument to support a theory that the close proximity between the dwelling and the garden (which contained marijuana plants) places those plants within the dwelling's protective curtilage.  Per Hays's argument, the troopers were required to obtain a search warrant prior to removing the gate and entering the property.  Thus, Hays requests that the Court strike from the affidavit information related to the discovery of the marijuana plants.  The argument, raised only in reply, fails.

The curtilage of a house potentially carries a "reasonable" privacy expectation.  *See United States v. Dunn*, 107 S. Ct. 1134, 1139 (1987) (referencing *Oliver v. United States*, 104 S. Ct. 1735, 1742 (1984)).  However, a government agent may enter upon open fields, or areas not characterized as curtilage, without a warrant as such entry "is not one of those 'unreasonable searches' proscribed by the text of the Fourth Amendment."  *See United States v. Rapanos*, 115 F.3d 367, 372 (6th Cir. 1997)(quoting *Oliver*, 104 S. Ct. at 1740).  To determine which areas of property constitute curtilage, courts examine the following four factors: 1) "proximity . . . to the home"; 2) "whether the area is included within an enclosure surrounding the home"; 3) "nature of the uses to which the area is put"; and 4) "steps taken by the resident to protect the area from observation by people passing by."  *See Dunn*, 107 S. Ct. at 1139.  These factors are useful insomuch as "they bear upon the centrally relevant consideration-whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection."  *See id.* at 1140.  Significantly for this case, "[t]he rather typical presence of fences, closed or locked gates, and 'No Trespassing' signs on an otherwise open field . . . has no constitutional import."  *See Rapanos*, 115 F. 3d at 372; *see also Johnson v. Weaver*, 248 F. App'x 694, 696 (6th Cir. 2007)(section 1983 case noting that a driveway that featured a locked gate and "No Trespassing" sign constitutes an "open field").

A defendant seeking to suppress evidence carries "the burden of establishing a prima facie case."  *See United States v. Murrie*, 534 F. 2d 695, 697 (6th Cir. 1976).  Once the defendant establishes a prima facie case, the burden then shifts to the government to prove the validity of the search.  *See id.* at 698.  However, without question, "[t]he government has the burden of proving the legality of a warrantless search."  *See United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007).

Here, the troopers gained access to the property after removing a locked cattle gate that blocked the driveway.  *See* Aff., at 2.  As previously noted, the presence of a locked gate does not,

3

argument in support of both a probable cause finding and *Leon* good-faith analysis. Additionally, the United States submitted a DVD (purportedly of the search) that the issuing trial commissioner did not review; Defendant objected to consideration of the DVD. *See generally* DE #20 Response.

**II. Fourth Amendment Analysis**

a. Standing

In order to challenge the propriety of a search, a defendant must have standing as demonstrated by proof that "the defendant's own constitutional rights have been violated." *See United States v. Davis*, 430 F.3d 345, 359-60 (6th Cir. 2005). The key to determining standing is "whether a defendant can establish 'a legitimate expectation' of privacy in the area searched or the items seized." *See id.* at 360; *see also Minnesota v. Carter*, 119 S. Ct. 469, 472 (1998)("[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable."). Ownership of a vehicle or home searched normally will suffice. *See, e.g., United States v. Salvucci*, 100 S. Ct. 2547, 2553 (1980) ("[P]roperty ownership is clearly a factor to be considered in

---

in and of itself, create an expectation of privacy. Nothing suggests that a fence, perimeter security, or "no trespassing" signs ringed the property. Additionally, under the *Dunn* factors, the driveway leading to the property constitutes an "open field." The record is unclear regarding the length of the driveway relative to the target property. However, the driveway obviously is visible and accessible from the roadway, *see id.* at 1, and as a driveway, its purpose (regardless of the presence of the gate) is to provide access to the property. Thus, under *Dunn*, the troopers properly entered an "open field" when they followed the driveway to the property itself.

     Similarly, the *Dunn* factors indicate that the troopers properly viewed the marijuana plants in the garden area of the property. According to Trooper Devasher, the marijuana plants were in "close proximity" to Defendant's truck and dwelling. *See id.* However, the record discloses no evidence (and Hays proffers none) that Defendant enclosed the garden and dwelling or obscured the view of the garden area from the driveway. Thus, as with the driveway, the garden does not fall within the "privacy umbrella" of the dwelling. The troopers did not view the marijuana from an improper vantage point; no basis exists to strike the marijuana observation from the "four corners" review. This is particularly true where a fly-over previously provided the first information indicating marijuana on the property.

4

determining whether an individual's Fourth Amendment rights have been violated[.]") An occupancy or rental interest will also typically support standing. *See, e.g., United States v. Smith*, 263 F.3d 571, 582-87 (6th Cir. 2001)(citing and discussing case law supporting its finding that an unauthorized driver of a rental car has standing to contest search); *Carter*, 119 S. Ct. at 473 ("[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not.").

Hays has standing to contest the validity of the search warrant. According to the deed submitted by Defendant, his mother (Wilma Isaacs) owns the property at issue. *See* DE #12-2 Deed; DE #12 Motion, at 1. However, the record shows that Defendant occasionally resided in the locked dwelling, *see* DE#12 Motion, at 3, which was wired for electricity, contained a bed, and "had a clothes line with clothes hanging on it." *See* Aff., at 2; Report, at 5. Prior to obtaining the search warrant, Trooper Devasher learned from local peace officers that the "first shed was . . . the residence of Timothy Hays" and discovered that the truck parked at the property, close to the shed, was registered to Defendant. *See* Aff. at 1-2. During the search, the troopers found documents addressed to Timothy Hays, including an energy bill for the dwelling. *See* Report, at 5. The United States does not contest standing, and the cited facts support a finding that Defendant occupied and enjoyed a privacy expectation in this property. Therefore, Defendant has standing to challenge the propriety of the search.

b. Probable Cause

The Fourth Amendment mandates that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." *See* U.S. CONST., amend. IV. Probable cause consists of "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *See United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). To determine probable

cause, an issuing magistrate must examine the totality of the circumstances and find "a 'fair probability' that evidence of a crime will be located on the premises of the proposed search." *See United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005) (en banc) (quoting *United States v. Bowling*, 900 F.2d 926, 930 (6th Cir. 1990)). A supporting affidavit must demonstrate the existence of a "nexus between the place to be searched and the evidence sought." *See United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)(quoting *United States v. Van Shutters*, 163 F.3d 331, 336-37 (6th Cir. 1998)).

When evaluating whether a warrant application presented probable cause, a reviewing court must accord "great deference" to the issuing magistrate's determination. *See United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). Such deference ensures that "an issuing magistrate's discretion [will] only be reversed if it was arbitrarily exercised." *See United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000). The reviewing court will uphold the issuing magistrate's probable cause determination so long as a "substantial basis" existed for the judge to conclude "that a search would uncover evidence of wrongdoing." *See Illinois v. Gates*, 103 S.Ct. 2317, 2331 (1983); *Allen*, 211 F.3d at 973.

Line-by-line scrutiny of the supporting affidavit is inappropriate. *See Allen*, 211 F.3d at 973. Further, the reviewing court must limit its review for a "substantial basis" to "information presented in the four corners of the affidavit." *See United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). Additionally, when the search at issue occurred pursuant to a warrant, the defendant "has the burden of making a prima facie case that the search was illegal." *See United States v. Franklin*, 284 F. App'x 266, 275 (6th Cir. 2008)(citing *United States v. Murrie*, 534 F.2d 695, 697-98 (6th Cir. 1976)).

Here, information in the affidavit's four corners provided a fair probability that contraband

6

or evidence would appear on the premises, and thus a substantial basis for warrant issuance. The warrant applied to the "property" at a defined and specific location, as described in the application. The Court notes:

a. The KSP verified marijuana located on the "property" both via helicopter fly-over and by visual confirmation from the KSP Marijuana Strike Force on the ground. The air surveillance noted "a large quantity of marijuana plants on [the] property." *See* Aff., at 2. The ground entry confirmed "multiple marijuana plants . . . as directed by the spotter."[3] *See id.*

b. The affiant identified the locked gate on a gravel entry road as providing the "only reasonable access to the property." *See id.* Thus, the buildings and marijuana on the property could be reached only via one reasonable means of ingress and egress.

c. The property encompassed a defined set of buildings, structures, and grounds. Thus, per the affidavit, the "property" included three sheds, a barn, an empty concrete foundation, a pond, and a "garden off the right side of the drive." *See id.* at 1. Further, per the affidavit, "Both the first shed[,] the truck and the marijuana plants were within close proximity to each other." *See id.* at 2.

d. The first shed "appeared to have electricity running to it and had a clothes line with clothes hanging on it." *See id.* Per the affiant, it "appeared to be a dwelling." *See id.* Local law enforcement authorities (unnamed) identified the first shed "as the residence of Timothy Hays." *See id.* The truck on the property was "registered to Timothy Hays." *See id.* This

---

[3] The affidavit identified the KSP Detective spotting from the air as well as the affiant confirming on the ground. The affidavit did not recite the qualifications of law enforcement but did associate the affiant, a 7+ year KSP officer, with the KSP "Marijuana Strike Force." Defendant does not challenge the basis for identification of the marijuana.

7

vehicle would corroborate the local authorities.

e. The property represented an integrated unit in that "[a]ll listed buildings to include the barn were landscaped and mowed." *See id.* Further, the affiant found "additional plants located behind the barn, leading from a trail off the mowed area." *See id.*

f. The Trooper opined that the plant quantity – which exceeded fifty – was "indicative of cultivation for the purpose of trafficking." *See id.* Further, a "large quantity" of the plants "were observed to be mature in relationship to the time of the season." *See id.*

The affidavit places at least fifty marijuana plants on the property itself, with most of those plants appearing in "close proximity" to the residential shed and a vehicle registered to Defendant. While the affidavit (unhelpfully) does not quantify the precise meaning of "near" or "close proximity," the affidavit inferentially depicts an integrated tract with landscaping and mowing that extends to the residence. Further, the reference to "close proximity" and triangular points including the garden, the truck, and the residential shed itself fairly place the garden marijuana in the immediate area of the alleged home.

Further, the marijuana expressly appeared on the defined and targeted property, and the gravel road with the locked gate was the only reasonable access to the property. As such, a natural, suspicious link exists between access to the property's buildings and access to the property's marijuana plants. To get to the property, anyone fairly would reach the property only through the same locked gate. The locked nature of the gate indicates that one person controls the property – including an alleged residence and vehicle associated with the purported occupant. *See United States v. Lynch*, No. 08-0060 SI, 2009 WL 358266, at \*2 (N.D. Cal. Feb. 10, 2009) (gated entrance indicative of control). Additionally, the manicured nature of the property means that someone actively managed the buildings (one of which apparently is a dwelling) and grounds during the

period of marijuana cultivation close to the residential building and behind the barn.

The affidavit's reference to the marijuana as more mature than would be expected does create a fair inference that the plants were grown indoors and transplanted. The presence of buildings (at least one of which had electricity) at this site raises a fair suspicion that the buildings would reveal evidence of cultivation. Someone cultivated the fifty+ plants, and the only ingress involved use of the locked gate. The buildings would not necessarily have cultivation-related evidence, but a reasonable basis existed for searching the property, structures included, because of the marijuana on the property.

In *Carpenter*, the Sixth Circuit's en banc, 11-2 decision, the Circuit Court rejected probable cause only because the warrant did not link off-site marijuana patches sufficiently with the residence searched. Indeed, the affidavit provided only that the observed plants were "near" the target residence and that a "road" connected the residence to the plants. *See Carpenter*, 360 F.3d at 594. *Carpenter* directly indicated that evidence more specifically linking the patch directly to the residence (*e.g.*, "that beaten paths led from the marijuana patches to the door of the residence, and that . . . men had been spotted walking from the marijuana patches to the residence") likely "would have been sufficient to establish probable cause." *See id.* at 594-95; *United States v. Rodrigue*, 560 F.3d 29, 35 (1st Cir. 2009) ("[T]he Sixth Circuit went on to suggest that, if referred to in the affidavit, the path itself would have been enough to create the necessary nexus."). *Carpenter* favorably cited *United States v. Malin*, 908 F.2d 163, 166 (7th Cir. 1990) for the proposition that "observation of marijuana growing in [defendant's] yard reasonably yielded the conclusion that marijuana or other evidence of marijuana possession would be found in [defendant's] house." *See Carpenter*, 360 F.3d at 595 (citing *Malin*).

The Court views the additional evidence included in the affidavit as well beyond that

included in *Carpenter*. The affidavit puts significant quantities of precocious marijuana plants close to a residence within a defined (and secure) perimeter. The nature of the cultivation and the character of the property (an integrated set of similarly maintained structures) contributes to a nexus between the premises and the act of cultivation. The fact of marijuana cultivation on the gated and insular property fairly suggests that cultivation evidence would appear in the buildings, to include the putative residence on the property.[4]

For all of these reasons, the Court determines that the issuing trial commissioner acted rationally and with a substantial basis to issue the subject warrant. The District Judge should therefore deny the suppression motion.

c. *Leon* Good Faith

Even if probable cause did not exist, *Leon* unquestionably would spare the search. Absent probable cause, evidence otherwise subject to suppression may survive the exclusionary rule under the *Leon* good faith exception. In *United States v. Leon*, 104 S. Ct. 3405 (1984), the Supreme Court held that the exclusionary rule does not bar evidence seized in reasonable, good-faith reliance on a search warrant subsequently determined to be invalid. *See Leon*, 104 S. Ct. at 3415; *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993). In such cases, application of the exclusionary rule would yield no additional deterrent effect, given that the officer's reliance on the warrant was *objectively* reasonable. *See United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006). A reviewing court, therefore, must determine whether the supporting affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *See*

---

[4] Probable cause to search a residence generally extends such cause to outbuildings and vehicles contained on the premises. *See, e.g., United States v. Bennett*, 170 F.3d 632, 638-39 (6th Cir. 1999)

*Leon*, 104 S. Ct. at 3421 (citation omitted); *see also Carpenter*, 360 F.3d at 595 (noting that this standard, by definition, "is a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place.")

Having created the good-faith exception, the Supreme Court enumerated four situations in which the exception would not apply: 1) where the affiant provided false information to the issuing judge and knew or should have known about the falsity; 2) "where the issuing magistrate wholly abandoned his judicial role"; 3) where the supporting affidavit is devoid of "indicia of probable cause"; and 4) where the warrant is "so facially deficient" that the "executing officers cannot reasonably presume it to be valid." *See Leon*, 104 S. Ct. at 3421 (citations omitted); *see also United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003)(reciting the standard).

Here, the troopers' reliance on the search warrant was objectively reasonable.[5] The Court is unpersuaded by Defendant's characterization of the supporting affidavit as "bare bones." Trooper Devasher's affidavit undoubtedly provides a "minimally sufficient nexus between the illegal activity and the place to be searched." *See Carpenter*, 360 F.3d at 596; *Van Shutters*, 163 F.3d at 336. The warrant affidavit described the entirety of the property to be searched to include the "wooden sided storage buildings," barn, "empty concrete foundation," pond, and "a garden off the right side of the drive." *See* Aff., at 1. Trooper Devasher also stated that a majority of the "multiple marijuana plants" were in "close proximity" to the dwelling and a vehicle linked to Defendant. *See id.* at 2. The presence of a lock, electrical power, and "clothes line with clothes hanging on it" supported the residential characterization of the "first shed." Additionally, the fact that the dwelling had electricity and was in "close proximity" to the garden containing a majority of the "mature" plants provides

---

[5] Only category 3 is at issue here. Defendant does not suggest the other instances of inapplicability.

11

a "minimally sufficient nexus" between the evidence sought and the location of the search. *See id.* Taken together, these facts demonstrate that the affidavit is not "so vague as to be conclusory or meaningless." *See Frazier*, 423 F.3d at 536. Because the trial commissioner did not issue the search warrant based on a "bare bones" affidavit, the troopers acted reasonably and in good faith. Evidence obtained pursuant to the search should not be suppressed, under *Leon*.

Again, *Carpenter* provides much guidance. In that en banc decision, 11 circuit judges endorsed applying *Leon* to an otherwise invalid warrant. The Court found an objectively reasonable nexus because the affidavit presented "was not completely devoid of any nexus between the residence and the marijuana." *See Carpenter*, 360 F.3d at 595. If the *Carpenter* affidavit passed the Leon test by "not totally lacking in facts connecting the residence to the marijuana patches," *see id.* at 596, the affidavit here obviously suffices under *Leon*. This affidavit has more detailed proximity information as to the marijuana and the dwelling; places the marijuana patches **directly** on the property targeted; and involves a locked and integrated tract that includes both plants and residence. *Carpenter* met *Leon's* threshold despite no stated link, other than undefined proximity, between the patches and the residence. By exceeding the nexus found adequate in *Carpenter*, the affidavit here secures *Leon* approval.[6]

d. Supplemental DVD

With its response, the United States submitted a DVD and argued that the Court could review

---

[6]

Even Judge Moore, one of the two dissenters in *Carpenter* regarding *Leon*, would likely approve of this affidavit under *Leon*. With reference to the affidavit in that case, she stated: "If the marijuana had been growing next to the trailer or in the patch of corn behind the trailer, the officers' belief in the warrant's validity might have been more reasonable." *See Carpenter*, 360 F.3d at 604 (Moore, J. dissenting). Again, the residence, truck, and marijuana plants in the garden were in "close proximity." Not only were plants in the garden, plants also appeared behind the barn on the property itself. Unquestionably, based on the 11-2 decision in *Carpenter*, *Leon* validates the warrant result here.

its contents to evaluate good faith. *See* DE #20 Response, at 5. Defendant opposed such review because the trial commissioner who issued the warrant did not review the content of the DVD to determine probable cause. *See* DE #23 Reply, at 5. The United States does not contend that the trial commissioner reviewed the DVD. *See* DE #20 Response, at 5 ("Although the United States does not assert that the issuing magistrate in this case reviewed the DVD, it does believe that this court can consider the DVD in determining whether the officer reasonably relied upon the warrant.").

Contrary to the United States's argument, the Court cannot properly include the DVD in its *Leon* good-faith analysis. In *United States v. Frazier*, the Sixth Circuit held that "a court reviewing an officer's good faith under *Leon* may look beyond the four corners of the warrant affidavit to information that was known to the officer *and* revealed to the issuing magistrate." *See Frazier*, 423 F.3d at 536 (emphasis added). In so holding, the Sixth Circuit, as the United States correctly notes in its brief, cited decisions from other circuits and included parenthetical information acknowledging that some circuits permit consideration of information not known to the issuing magistrate. *See id.* (citing, e.g., *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001)("'[w]hen assessing the objective [reasonableness] of police officers executing a warrant, we must look to the totality of the circumstances, including any information known to the officers but not presented to the issuing judge.'")). However, because *Frazier* explicitly states that the outside information had to be known to **both** the officer and the magistrate, this Court adheres, as it must, to that holding. Therefore, the Court did not view the tendered DVD or consider its content as part of the good-faith analysis.

### III. Recommendation

For the reasons discussed, the Court recommends that the District Court DENY the Motion to Suppress.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this

13

recommendation, issued under subsection (B) of that statute. As defined by § 636(b)(1) and Fed. R. Crim. P. 59(b), within ten days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for de novo consideration by the District Court. The parties should consult the aforementioned statute and rule for specific appeal rights and mechanics. Failure to object in accordance with Rule 59(b) waives a party's right to review.

      This the 24th day of June, 2009.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge